UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

JOANN KOLNBERGER,

                           Debtor(s).
---------------------------------------------------------X

Case No.: 18-75904-AST

Chapter 13

## MEMORANDUM OPINION AND ORDER
## GRANTING RELIEF FROM THE AUTOMATIC STAY

***Statement of issues and summary of ruling***

Currently pending before the Court is a motion for relief from the automatic stay filed by

a mortgage servicer, seeking to return to state court to continue a foreclosure action relating to

Debtor Joann Kolnberger's ("Debtor") principal residence (the "Motion").  Debtor filed an

objection (the "Objection") and has also filed an adversary proceeding against the mortgage

servicer and others for alleged violations of state and federal law arising from denials of her

requests to modify her mortgage.

The Motion and Objection present two novel issues: (1) Debtor's claim that, under the

federal Real Estate Settlement Procedures Act ("RESPA"), a mortgage servicer cannot seek stay

relief to continue a state court foreclosure action if the debtor has submitted a non-bankruptcy

loss mitigation request to it, and may not pursue stay relief until the loss mitigation process has

concluded, including any applicable appeals[1]; and (2) Debtor's claim that an alleged post-

petition RESPA violation is a defense to a motion for stay relief. Debtor also asserts a more

---

[1] On December 8, 2009, the United States Bankruptcy Court for the Eastern District of New York, instituted a court-supervised loss mitigation program concerning individual debtors owning residential real property at risk of loss to foreclosure.  See General Order No. 543, as amended by General Orders Nos. 582 and 676. The program is implemented in cases assigned to judges of this Court who decide to participate in such program. Judge Trust is not participating in this loss mitigation program.  The dispute in this case does not concern the EDNY loss mitigation program.

conventional defense that she can adequately protect the lender's interest, but to an undefined point in time.

For the reasons herein, the Motion is granted and Debtor's Objection is overruled; the adversary proceeding will be separately addressed in due course.

## JURISDICTION

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G) and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This decision constitutes the Court's findings of fact and conclusions of law in accordance with Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.[2]

### The Foreclosure Action and Bankruptcy Case

In 2006, Debtor and co-obligor Michael Kolnberger ("Co-Debtor") executed a note in favor of First Financial Equities, Inc. in the amount of $456,000, secured by a mortgage against real property located at 106 Park Hill Avenue, Massapequa, NY 11758 (the "Loan" and the "Property"). The Loan was modified in 2009, creating a new principal balance of $462,140.85.

In 2015, Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the Impac Secured Assets Corp., Mortgage Pass-Through Certificates Series 2006-4 ("DBT") commenced a foreclosure action against Debtor and Co-Debtor in Nassau County, New York, under Index Number 15-007128 (the "Foreclosure Action").

---

[2] The factual background and procedural history are taken from the pleadings, exhibits and other documents submitted by the parties and the public docket in this case.

On June 11, 2018, DBT obtained a judgment of foreclosure and sale (the "Judgment of Foreclosure"). A foreclosure auction of the Property was scheduled for September 4, 2018; that sale was stayed by Debtor filing this bankruptcy case under chapter 13 of the Bankruptcy Code on August 31, 2018.

Marianne DeRosa was appointed the Chapter 13 Trustee (the "Trustee").

In her bankruptcy petition and schedules, Debtor claims the Property as her residence, with an ascribed value of $475,000, secured by a mortgage in favor of Select Portfolio Servicing in the amount of $583,066.93.  [dkt items 1, 4]  Debtor identified the Foreclosure Action in her schedules.

On August 31, 2018, Debtor filed her chapter 13 plan (the "Plan"), in which, *inter alia*, she proposes to request a loan modification of the Loan secured by the Property.  Her Plan provides that her pre-petition mortgage arrears of $166,686 will be capitalized into the outstanding principal balance, resulting in a new principal balance of $583,066, to be paid at 4% interest over 40 years, resulting in a monthly mortgage payment of $3,456 per month, including interest and escrow payments of $1,020.  [dkt item 6] The Plan has not been confirmed. DBT objected to confirmation of the Plan.  [dkt items 15, 40]

On December 24, 2018, Select Portfolio Servicing Inc., as servicer for DBT ("SPS"; however, for purposes of this decision SPS will also be referred to as "DBT" unless the context requires otherwise) filed its Motion seeking stay relief under 11 U.S.C. § 362(d)(1) and/or (2) and relief from the co-debtor stay of § 1301(a) to continue the Foreclosure Action. [dkt item 23] The Motion alleges, *inter alia*, that the Loan balance has increased to $577,181.26, interest is accruing at 5.25% per year, that the Property had a value of $485,000 as of September 2018, and

that Debtor has failed to make post-petition monthly mortgage payments of approximately $3,783.49 per month.  DBT gave Debtor notice of a hearing set for January 31, 2019.

On January 22, 2019, Debtor filed her Objection. [dkt item 26] Debtor does not challenge the factual allegations concerning her defaults, the Loan balance, nor the Property value, nor does she claim that DBT lacks standing to seek stay relief. Rather, she states she submitted a loss mitigation package post-petition to SPS on November 9, 2018 (the "Modification Request"), which was denied by letter dated November 13, 2018; she lodged an appeal on November 29, 2018, which had not been resolved until December 27, 2018, which was three days after DBT's Motion was filed. Debtor asserts these alleged facts provide three bases to deny stay relief.  First, she asserts that post-petition DBT violated RESPA, specifically 12 C.F.R. § 1024.41(d), by failing to provide a specific basis for denying Debtor's Modification Request.  Similarly, Debtor alleges DBT violated § 419.11(d) of title 3 of the New York Compilation of Codes, Rules, and Regulations for its failure to provide a detailed basis for denial of the Modification Request. N.Y. Comp. Codes R. & Regs. tit. 3, § 419.11(d).[3] Second, Debtor asserts that post-petition DBT violated RESPA's "dual tracking" prohibition, specifically 12 C.F.R. § 1024.41(g), because the Motion was filed prior to the loss mitigation process, including any appeals, finally concluding. Finally, Debtor alleges she has or can provide adequate protection of DBT's interests,

---

[3] Part 419.11(a) creates an obligation on the part of servicers to "make reasonable and good faith efforts" to engage in "appropriate loss mitigation options, including loan modifications as an alternative to foreclosure." Section 419.11(d) requires that servicers must complete their review of a borrower's eligibility for a loan modification or other loss mitigation options and advise the borrower or their representative of the determination in writing within 30 days of receiving all required documentation. *Fed. Nat. Mortg. Ass'n v. Singer*, 48 Misc. 3d 1211(A), 20 N.Y.S.3d 291 (N.Y. Sup. Ct. 2015). Several courts have held that Part 419 does not create a private cause of action. *1077 Madison St., LLC v. Smith*, No. 13-CV-7182 DLI RLM, 2015 WL 5793427, at *16 (E.D.N.Y. Sept. 30, 2015), *aff'd*, 670 F. App'x 745 (2d Cir. 2016); *See Wells Fargo Bank, N.A. v. Vanderkamp*, 5 N.Y.S.3d 331, 2014 WL 5642261, at *6 (Sup.Ct. Suffolk Cnty. Nov. 3, 2014).  Additionally, Part 419.11(a) provides that "nothing in this Part shall be construed to require a servicer to perform services in a manner inconsistent with the terms of the note, mortgage or contract for the servicing of a mortgage loan."

presumably under Bankruptcy Code §§ 361, 362(d)(1) and has paid the Trustee monthly payments of $3,456.00 as called for under her Plan to adequately protect DBT's interest.

On January 25, 2019, DBT filed a response, arguing essentially that Debtor's defenses pursuant to RESPA should be precluded under the doctrines of *Rooker-Feldman*, *res judicata*, and collateral estoppel because the state court in the Foreclosure Action denied Debtor's similar arguments in connection with DBT's denial of loan modification requests submitted by Debtor prior to entry of the Judgment of Foreclosure.  Additionally, DBT asserts that RESPA does not have any bearing on the determination of whether cause exists to lift the automatic stay under § 362(d)(1),(2), that Debtor's pre-petition arrears to DBT total $166,645.82 and that DBT is not adequately protected.  [dkt item 28]

On January 28, 2019, Debtor filed an adversary proceeding against DBT, SPS, and Bank of America NA, seeking damages for alleged pre and post-petition RESPA and New York state law violations in connection with Debtor's various requests for loan modifications (the "Adversary"). [adv. pro. no. 19-8021; dkt item 1]

The Court held the hearing on the Motion on January 31, 2019.  Part of the arguments concerned the allegations made in the Adversary and the relief Debtor seeks there. Debtor acknowledged at the hearing that she has been denied a loan modification on various occasions, she has been in default on the Loan since 2014, and that she cannot confirm a chapter 13 plan unless DBT provides her with the loan modification substantially as she has proposed in her Plan. Pending this decision, the Court authorized the Trustee to disperse three months of payments to DBT, of $11,400 that Debtor had previously paid the Trustee as interim adequate protection. The Court set a post hearing briefing schedule allowing supplemental briefs on the

stay relief issues to be filed by February 14, 2019 and scheduled an adjourned hearing for February 28, 2019.

On February 14, 2019, and corrected on February 15, 2019, Debtor filed a memorandum of law, in which she asserts that she has a right of setoff against DBT based on the alleged RESPA and state law violations being pursued in the Adversary, which she estimates to be worth $750,000. Debtor also asserts that DBT is violating a servicer participation agreement ("SPA") that SPS entered into with Federal National Mortgage Association, a federally chartered corporation, as financial agent of the United States ("Fannie Mae"), in which SPS agreed to participate in, among other things, the Home Affordable Modification Program ("HAMP"), which as part of the Emergency Economic Stabilization Act of 2008 was intended to, among other things, make foreclosure prevention services available to the marketplace.[4] [dkt item 37] Debtor asserts that the SPA requires participating servicers to screen all loans that are in default or imminent danger of default for modification under the HAMP guidelines. Additionally, Debtor asserts that DBT is in violation of a certain pooling and servicing agreement, which requires DBT as trustee to service certain mortgage loans in compliance with Fannie Mae guidelines.  Debtor asserts DBT is in violation of the Fannie Mae guidelines.

On February 14, 2019, DBT filed its supplemental memorandum of law, asserting that Debtor has failed to establish that an alleged violation of RESPA is a defense to a motion for relief from the automatic stay for cause.  Additionally, DBT asserts that RESPA's prohibition of "dual tracking" does not prohibit a servicer from seeking stay relief because a motion for stay

---

[4]  It is not clear from Debtor's pleadings which of these agreements were in effect at the time of the Modification Request.  Additionally, Debtor has failed to point to any portion of any of the agreements that provide Debtor with standing as a third-party beneficiary of the agreements or that the agreements prohibit DBT from seeking stay relief in Debtor's case. *See Markle v. HSBC Mortg. Corp. (USA)*, 844 F. Supp. 2d 172, 182 (D. Mass. 2011) (finding that mortgage selling and servicing contract entered into between servicer and Fannie Mae did not provide standing to homeowner to assert breach of contract claim).

relief is not one of the expressly prohibited acts under 12 C.F.R. § 1024.41(g).[5]  DBT also asserts

that Debtor's monthly payments in the amount of $3,456 do not adequately protect DBT because

the monthly mortgage obligation on the Loan is $3,783.49. [dkt item 31]

On February 28, 2019, the Court held an adjourned hearing and then took the Motion on

submission, but allowed the parties to file a letter identifying specific cases that were discussed

at the February 28 hearing.

On March 1, 2019, Debtor filed a letter with citations to additional cases.  [dkt item 39]

DBT filed a letter in response. [dkt item 41]

## *RESPA*

RESPA is a broad remedial statute enacted by Congress to protect consumers from

unnecessarily high settlement charges and other abusive practices in the real estate settlement

process. 12 U.S.C. § 2601(a).  *McCann v. Rushmore Loan Mgmt. Servs., LLC*, No. 15-CV-6502,

2017 WL 1048076, at *3 (E.D.N.Y. Mar. 16, 2017); *Farber v. Brock & Scott, LLC*, No. TDC-

16-0117, 2016 U.S. Dist. LEXIS 139574, at *6–7 (D. Md. Oct. 6, 2016); *He v Ocwen Loan*

*Servicing, LLC*, No. 15-CV-4575 (JS), 2016 WL 3892405 (E.D.N.Y. July 14, 2016).  As the

*Farber* court noted, § 2605, which governs the servicing of mortgage loans, provides that "'[a]

servicer of a federally related mortgage shall not ... fail to comply with any … obligation found

---

[5] 12 C.F.R. § 1024.41(g) provides as follows:

(g) Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:

(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(2) The borrower rejects all loss mitigation options offered by the servicer; or

(3) The borrower fails to perform under an agreement on a loss mitigation option.

by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.'" 2016 U.S. Dist. LEXIS 139574, *7 (quoting 12 U.S.C. § 2605(k)(1)(E)). That court went on to state that § 2605 further provides that "'[w]hoever fails to comply with any provision of this section shall be liable to the borrower,' including potentially for actual and statutory damages." *Farber*, 2016 U.S. Dist. LEXIS 139574, *7 (quoting 12 U.S.C. § 2605(f)(1)).

Much of RESPA is implemented under the regulations promulgated by the Consumer Financial Protection Bureau ("CFPB"), and known as Regulation X ("Reg X"), found at 12 C.F.R. §§ 1024.1-1024.41. Within these regulations, Subpart C is specifically directed to mortgage servicers, who are required to follow specified loss mitigation procedures established under 12 C.F.R. § 1024.41 for a mortgage loan secured by a borrower's principal residence. However, the enforcement and limitations subsection of 12 C.F.R. § 1024.41 expressly provides as follows:

> A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)). Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law.

12 C.F.R. § 1024.41(a). Pursuant to § 1024.41, a mortgage servicer "that receives a borrower's 'complete loss mitigation application more than 37 days before a foreclosure sale' must evaluate the borrower for all loss mitigation options, provide the borrower with written notice of its options, if any, and notify the borrower in writing if its application has been rejected." *Farber*, 2016 U.S. Dist. LEXIS 139574, at *7 (quoting 12 C.F.R. § 1024.41(c)-(d) (2016)). As Judge Seybert of the Eastern District of New York noted in *He*, "[a] mortgage servicer need not

consider a loss mitigation application received less than thirty-seven days before a foreclosure sale." 2016 WL 3892405, at *2; 12 C.F.R. § 1024.41(c)(1), (g)(1).  "A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

Reg X clearly prohibits servicers from taking certain actions when a complete loss mitigation request has been timely submitted.  However, Reg X does not impose a blanket prohibition on all acts by the servicer once the loss mitigation request is submitted, and distinguishes between the types of actions that are prohibited during two distinct time periods. The first period is when a loss mitigation request is made before a foreclosure referral or when the borrower is less than 120 days delinquent on the loan.  During that period of time, 12 C.F.R. § 1024.41(f) is applicable and provides that a servicer "shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process" unless the loss mitigation procedures are completed.  The second period is when a loss mitigation request is made after a foreclosure referral but more than 37 days before a foreclosure sale is to be held. During that period, 12 C.F.R. § 1024.41(g) is applicable and, as noted, prohibits a servicer from filing a motion for "foreclosure judgment or order of sale, or conduct a foreclosure sale" until the applicable loss mitigation procedures are completed, which may include an appeal from the loss mitigation decision.[6]  However, a borrower may not be entitled to an appeal if the loss mitigation

---

[6] This second time period is further broken into two sub-time periods: (1) after the first notice or filing for a foreclosure process, but 90 days or more exist before a foreclosure sale, 12 C.F.R. § 1024.41(e)(1), (h)(1); and (2) after the first notice or filing for a foreclosure process, and less than 90 days, but more than 37 days before a foreclosure sale 12 C.F.R. § 1024.41(e)(1).  Each of these sub-time periods impose additional requirements on a servicer which are not applicable here.

request is submitted less than 90 days before a scheduled foreclosure sale. 12 C.F.R. § 1024.41(h).[7]

Here, Debtor does not dispute that her post-petition Modification Request was submitted after the first notice or filing in the Foreclosure Action; DBT had already obtained the Judgment of Foreclosure and scheduled a foreclosure sale prior to Debtor's Modification Request. Accordingly, the limitations provided for by 12 C.F.R. § 1024.41(f) are inapplicable to Debtor's arguments.

Thus, the first issue here is whether 12 C.F.R. § 1024.41(g) prohibits a mortgage servicer from seeking stay relief to return to the non-bankruptcy court foreclosure process after a previously scheduled foreclosure sale has been stayed by the bankruptcy filing, and the debtor has submitted a post-petition loss mitigation request; this Court concludes that it does not.

### RESPA does not countermand seeking stay relief

Debtor has not cited a single case holding that a mortgage servicer violates RESPA by seeking stay relief to continue a foreclosure action. "[F]iling a voluntary bankruptcy petition operates as an automatic stay applicable against all persons and entities, prohibiting, *inter alia*, the continuation of judicial proceedings against the debtor and property of the estate. 11 U.S.C. § 362(a)." *In re Ebadi*, 448 B.R. 308, 313 (Bankr. E.D.N.Y. 2011). Once the stay has been invoked, a creditor must come to the Court for stay relief; failure to do so may result both in the prohibited act being void and in the creditor being sanctioned. *Id*. at 313; *see generally Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987)).

---

[7] "If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower." 12 C.F.R. § 1024.41(h)(1).

Bankruptcy Code § 362(d)(1), (2) provide two relevant, alternate bases for relief from the automatic stay:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if-
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(1),(2).

As noted, the Reg X provision at issue here, 12 C.F.R. § 1024.41(g), expressly provides that if a borrower submits a loss mitigation application more than "37 days before a foreclosure sale," then "a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale" until the loss mitigation process is complete under the regulations. Debtor's reading of 12 C.F.R. § 1024.41(g) as limiting "the ability of a servicer to initiate foreclosure procedures once a borrower has submitted a complete loss mitigation application" is overly broad; § 1024.41(g) only limits a servicer from a motion for "foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale." 12 C.F.R. § 1024.41(g). The automatic stay enjoins a lender or servicer or any other creditor from moving for foreclosure judgment or order of sale or conducting a foreclosure sale unless and until the bankruptcy court lifts the stay. However, an order lifting the stay is not the same as moving for a foreclosure judgment or an order of sale, or conducting a foreclosure sale; all of these acts occur under the auspices of a non-bankruptcy process, either through a judicial or a non-judicial proceeding governed by non-bankruptcy law; an order lifting the stay simply allows the parties to return to the non-bankruptcy process and for the servicer to then resume the foreclosure proceeding should it choose to do so. Thus, merely

seeking relief from the injunctive effect of the automatic stay is not itself an act prohibited on the face of the applicable RESPA statute or the regulations promulgated thereunder.[8]

Moreover, since Congress passed both the Bankruptcy Code and RESPA, if it had intended to prohibit stay relief from being pursued while the Reg X loss mitigation process proceeded, it could have said so either in the Bankruptcy Code or in RESPA; it did not. Additionally, in 12 C.F.R. § 1024.41(g), the CFPB did not expressly limit a servicer from proceeding with the foreclosure process in a specified setting.[9]  As discussed above, the CFPB carefully chose the language it used when it distinguished between the types of actions that are

---

[8] As is quite clear from the statute, the stay of § 362(a) prohibits any number of acts being taken absent an order of the bankruptcy court:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

[9] Although this Court is required to apply the plain meaning of the statute and has reached its conclusion under the plain meaning of the statute, the CFPB's official interpretation of 12 C.F.R. § 1024.41(g), although not necessarily binding, may be instructive as to the CFPB's intent in promulgating 1024.41(g):

> As stated in comment 41(g)-2, nothing in 1024.41(g) prohibits a servicer from continuing to move forward with a foreclosure process (assuming that the first notice or filing was made before a servicer received a complete loss mitigation application) so long as the servicer does not take an action that will directly result in the issuance of a foreclosure judgment or order of sale, or a foreclosure sale. For example, if a servicer is required to engage in mediation or to make publications in a local paper, a servicer may proceed with any such requirements, so long as the applicable result of a foreclosure judgment or order of sale, or conduct of a foreclosure sale does not result from such action.

Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696-01, 10897-98 (Feb. 14, 2013).  Additionally, several courts that have interpreted RESPA, including the Eastern District of New York, have looked to the CFPB's comments for guidance. *He*, 2016 WL 3892405, at *2.  *See generally In re Addison*, 580 B.R. 24, 30, 32 (Bankr. E.D.N.Y. 2018) (in a case involving the presumption of abuse under Bankruptcy Code Section 707(b), and following the plain meaning approach to the Code and the Means Test, "the Court finds its guidance in Form 122A–2 and the Local Standards", and not in the Internal Revenue Service manual in the chapter entitled Financial Analysis Handbook.)

prohibited before the first notice or filing of a foreclosure proceeding under § 1024.41(f), and thereafter, under § 1024.41(g); the CFPB made no mention of seeking relief from the automatic stay in either instance.  The CFPB was clearly cognizant of the automatic stay during the rule making process because it provided in § 1024.39(c) that a servicer is not required to communicate with a borrower in a manner inconsistent with applicable bankruptcy law or a court order in a bankruptcy case.  Had the CFPB intended that a servicer not pursue relief from the automatic stay while a post-petition loss mitigation request was pending it could have expressly so provided, but did not.

Further, if this Court were to accept Debtor's argument and read 12 C.F.R. § 1024.41(g) as prohibiting a servicer from seeking stay relief during the RESPA loss mitigation process, then the regulations promulgated in Reg X under RESPA might be in conflict with the Bankruptcy Code's provisions concerning stay relief; in that circumstance, this Court would need to determine whether "legislative statutes take precedence over conflicting administrative regulations."  *In re NextWave Pers. Commc'ns Inc.*, 244 B.R. 253, 276 (Bankr. S.D.N.Y.), *subsequent mandamus proceeding sub nom. In re F.C.C.*, 208 F.3d 137 (2d Cir. 2000) (quoting *Furlow v. United States*, 55 F. Supp. 2d 360, 364 (D. Md. 1999)); *see, e.g., Caldera v. J.S. Alberici Constr. Co.*, 153 F.3d 1381, 1383 n. ** (Fed. Cir. 1998) ("Statutes trump conflicting regulations").  However, because this Court does not find the Bankruptcy Code and the RESPA implementing regulations at issue to be disharmonious, this opinion expresses no view on the precedence of statute over regulation.[10]

---

[10] The Court also notes that the foreclosure sale was scheduled for September 4, 2018 and the Modification Request was submitted on November 9, 2018, which was approximately 65 days after the scheduled foreclosure sale that this filing stopped.  The Court need not and does not reach whether § 1024.41(g), which limits a servicer from a motion for "foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale" if a complete loss mitigation package is submitted 37 days before a foreclosure sale, or § 1024.41(h) which is only available when a loss mitigation request is submitted 90 days before a scheduled foreclosure sale and provides a borrower a right to appeal, are triggered when a scheduled foreclosure sale is enjoined by the imposition of the automatic stay.

Additionally, several courts have found that neither RESPA nor Reg X provide borrowers with a defense to a mortgage foreclosure or a right to an injunction. *Fed. Nat. Mortg. Ass'n v. Karastamatis*, 52 Misc. 3d 1007, 1009, 36 N.Y.S.3d 360, 362 (N.Y. Sup. Ct. 2016) (Reg X does not provide a mortgagor a right to obtain a stay of proceedings in foreclosure actions or to obtain a vacatur of or orders or judgments issued in such actions); *Wells Fargo Bank, N.A. v. Han*, 60 Misc. 3d 1203(A) (N.Y. Sup. Ct. 2018) (same); *Clark v. Ocwen Loan Servicing, LLC*, No. 15-CV-659, 2015 WL 6159447, at *6 (W.D. Mich. Oct. 20, 2015) (RESPA does not provide for injunctive relief); *Caggins v. Bank of New York Mellon*, No. 15-11124, 2015 WL 4041350, at *2 (E.D. Mich. July 1, 2015)(there is no provision found in RESPA under which a mortgagor can seek to have foreclosure proceedings nullified); *Roosevelt Cayman Asset Co. II v. Mercado*, 259 F. Supp. 3d 1, 5 (D.P.R. 2016); *Ayala v. Pac. Coast Nat'l Bank*, No. 16-CV-00723(ODW), 2016 WL 1700376, at *2 (C.D. Cal. Apr. 27, 2016) ("it does not appear that [] [RESPA] provides for injunctive relief, and therefore cannot be used to enjoin (even temporarily) the impending foreclosure").  Again, it would be at odds with RESPA and the Bankruptcy Code to hold that while RESPA does not provide for injunctive relief, a RESPA violation could be utilized as a basis to deny a creditor relief from the injunctive effect of the stay. Moreover, Debtor does not seek injunctive relief in her Adversary.

***Summary nature of stay litigation***

Accepting Debtor's argument also departs from the inherent nature of stay litigation.  As this Court has previously stated, "Congress intended that stay relief litigation be summary in fashion and expeditious in time.  This is due in part to the stay being an injunction imposed by the mere filing of a bankruptcy case, and the recognition that granting stay relief returns the parties to the auspices of a court of competent jurisdiction to determine, on the merits, the

relative rights, liabilities and responsibilities of the parties.  Congress manifested this intention, in part, by requiring that stay relief motions be heard and determined within thirty days from filing of the motion, unless the court determines within such thirty days that the party opposing stay relief has demonstrated a 'reasonable likelihood' that it will prevail at the conclusion of a final hearing; such a final hearing is to then be held within thirty days thereafter. 11 U.S.C. § 362(e)." *In re Escobar*, 457 B.R. 229, 236 (Bankr. E.D.N.Y. 2011); *accord In re Sterling*, Case No. 14–12608–shl, 2018 WL 313085 (Bankr. S.D.N.Y. Jan. 5, 2018).

Additionally, other courts have stated that "at hearings on relief from stay, the only issue will be the lack of adequate protection, the debtor's equity in the property and the necessity of the property to an effective reorganization of the debtor, or the existence of other causes for relief from stay. This hearing will not be the appropriate time in which to bring in other issues such as counterclaims against the creditor, which although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters." *In re Shehu*, 128 B.R. 26, 28 (Bankr. D. Conn. 1991) (quoting S. Rep. No. 989, 95th Cong., 2nd Sess. 55, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5841).  *See generally In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287, 291 (Bankr. S.D.N.Y. 1991) (extrinsic defenses and counterclaims unrelated to stay litigation should be disallowed); *D-1 Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36, 38 (5th Cir. 1989) (counterclaims against a creditor seeking to lift the stay on largely unrelated matters are not to be handled in the summary fashion required by the expedited nature of the proceeding).  *But see Grand Traverse Dev. Co. Ltd. P'ship v. Bd. of Trs. of Gen. Ret. Sys.*, 150 B.R. 176, 189 (Bankr. W.D. Mich. 1993) (court must exercise discretion to determine whether the purposes of the automatic stay would be served or hindered by allowing the stay to remain in force while the merits of the adversary proceeding are litigated in

bankruptcy court); *In re Cong. 819, LLC*, No. 12-00300, 2013 Bankr. LEXIS 1237, at *22

(Bankr. D.D.C. Mar. 28, 2013) (court may apply preliminary injunction standards in deciding

whether the circumstances warrant keeping the automatic stay in place based on the possible

merits of the counterclaim).

      In order to hear and determine whether RESPA or Reg X suspends seeking stay relief,

this Court might need to rapidly determine, *inter alia*, a number of statutory and factual issues

under those laws and regulations, which have no bearing on cause, the lack of adequate

protection, the debtor's equity in the property and the necessity of the property to an effective

reorganization of the debtor.  These include:

Whether the party seeking stay relief is a servicer, which is defined as "the person responsible
for servicing of a loan," with "servicing," in turn, defined as "receiving any scheduled periodic
payments from a borrower pursuant to the terms of any loan . . . and making payments of
principal and interest and such other payments with respect to the amounts received from the
borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(2)-(3);
*Farber,* 2016 U.S. Dist. LEXIS 139574, at *9.

Whether a "complete loss mitigation application" had been submitted and if so when. *See
Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016) (footnote omitted);
*He*, 2016 WL 3892405 at * 2.

Whether, if Debtor asserts the servicer is at fault for not having received a complete application,
the servicer has exercised "reasonable diligence in obtaining documents and information to
complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1).

Whether the servicer has properly "evaluate[d] the borrower for all loss mitigation options…."
*Farber,* 2016 U.S. Dist. LEXIS 139574, at *7; and

Whether the mortgage at issue was executed incident to a personal loan; "RESPA does not apply
to '[b]usiness purpose loans,'" 12 C.F.R. § 1024.5(a)-(b). *Sylvester v. Interbay Funding LLC*,
No. 15-CV-1736 (JPO), 2017 WL 4382056, at *4 (S.D.N.Y. Sept. 29, 2017), *citing Royal Host
Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 355 (S.D.N.Y. 2016).

      Congress did not provide or intend that these issues be heard and determined in the

context of a summary lift stay proceeding that is to be completed within sixty days.  As noted,

Debtor seeks $750,000 of RESPA damages and asserts a right of setoff against her Loan

obligations in such amount. Congress did not provide that this Court should determine the viability of this setoff claim in the summary context of lift stay litigation. Further, Debtor seeking affirmative relief in the context of this stay dispute violates Bankruptcy Rule 7001, which requires affirmative relief of this type to be sought through an adversary proceeding. *See* Rule 7001(1)(adversary proceeding required for a proceeding to recover money or property).

### *RESPA issues may be pursued in the Adversary or elsewhere*

Debtor seeks to use RESPA as both a shield against the stay relief Motion being considered and a sword to seek damages. All of Debtor's state and non-bankruptcy federal law claims and DBT's defenses thereto can be tried and determined in accordance with ordinary litigation processes in the Adversary. As the district court for the Eastern District of New York and other courts have noted, "[b]orrowers have a private right of action to enforce the procedural requirements set forth in § 1024.[41]. The remedies available are set forth in section 6(f) of RESPA, which provides for the recovery of monetary damages in the amount of '(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.'" *McCann,* 2017 WL 1048076, at *3 (internal citations omitted); *see also He*, 2016 WL 3892405 at * 2 (dismissing a claim under NY Gen. Bus. Law # 349 on a Rule 12(b)(6) motion but not dismissing borrower's RESPA claim).

Debtor incorrectly relies on *In re Coppola*, 596 B.R. 146 (Bankr. D.N.J. 2018). First, *Coppola* was decided in the context of an adversary proceeding, not a lift stay motion. Second, the *Coppola* debtor did not challenge a loss mitigation denial as a RESPA violation; she sued claiming the servicer failed to properly respond to a notice of error under 12 C.F.R. § 1024.35. Third, while *Coppola* acknowledges that RESPA does not establish a specific loss mitigation

protocol, it does require mortgage servicers to specify reasons for the denial of a loss mitigation request so that the borrower is aware of the information used by the servicer in declining a specific option so the borrower can decide whether to appeal the denial, and, if so what issues the appeal should address. *Coppola*, 596 B.R. at 154-55, 164-65.

Debtor also relies on *Nash v PNC Bank, N.A.*, TDC-16-2910, 2017 WL 1424317 (D. Md. April 20, 2017) which is not a bankruptcy case. *Nash* addressed whether a modification denial letter concerning a HAMP loan that simply refers to investor guidelines as not giving the servicer the authority to modify a loan or offer the requested alternative to foreclosure constitutes a violation of 12 C.F.R. § 1024.41(d). In denying a Rule 12(b)(6) motion to dismiss a RESPA violation claim that the lender failed "to provide sufficient detail about the reasons for the denial," the *Nash* court noted that "[f]ew courts have considered the scope of 12 C.F.R. § 1024.41(d) and what specifically must be provided to a borrower whose application for a loan modification is denied." *Id.* at * 3.

Finally, DBT's reliance on *Sterling* is also misplaced. While the pro se debtor there alleged a hodgepodge of claims against a lender seeking stay relief, the court did not reach whether or not a RESPA violation allegation is a valid basis to deny stay relief. 2018 WL 313085 at * 5-6.

As noted, Debtor has neither cited a case, nor has this Court found one, that holds that an alleged RESPA violation is a valid basis to deny stay relief.

DBT asserts that its state court Judgment of Foreclosure precludes any pre-judgment RESPA violation claims as a violation of the *Rooker-Feldman* doctrine. *See generally Hoblock v. Albany Cnty. Bd. Of Elections*, 422 F.3d 77, 84 (2d Cir. 2005) (*Rooker-Feldman* doctrine provides that "federal district courts lack jurisdiction over suits that are, in substance, appeals

from state-court judgments.") In the Foreclosure Action, Debtor opposed DBT's motion for judgment and sale, asserting that DBT violated various RESPA and New York laws in connection with a loss mitigation request made by Debtor in or around 2016, which is also the subject of the Adversary.[11]   The state court apparently overruled the Debtor's arguments and granted DBT's motion, resulting in the Judgment of Foreclosure; accordingly, DBT asserts that Debtor should not be allowed to raise issues that should have been decided in the Foreclosure Action. This Court does not need to decide this issue to resolve the Motion, as Debtor's defense to stay relief is premised on the post-petition Modification Request, not the previously denied pre-petition requests.

***Why stay relief should be granted under § 362(d)(1), (2)***

As noted above, Bankruptcy Code § 362(d)(1), (2) provide two alternate bases for relief from the automatic stay: under (d)(1) for cause, or under (d)(2) if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(1),(2).  Because these bases for lifting the stay are expressed in the disjunctive, "if the court finds that the debtor has no equity in the property and that such property is not necessary to an effective reorganization, it is not necessary to consider the alternate basis for relief from the stay, e.g., whether the secured creditor lacks adequate protection." *In re Zeoli*,

---

[11] This Court notes that it is not entirely clear that even if a judgment of foreclosure were obtained and a sale occurred, that a claim for monetary damages under RESPA that had not been litigated would be precluded.  *See McCann*, 2017 WL 1048076, at *4 (determining that a borrower's "claims under RESPA are independent from the state court judgment of foreclosure" and thus not barred by the *Rooker-Feldman* doctrine; "a finding by this Court that [borrower] is entitled to money damages from [servicer] would not necessarily challenge the state court's decision regarding the [f]oreclosure [a]ction or require a finding on the merits of the state court's decision.") Further, this Court has not been asked to make a determination whether any of Debtor's previous loss mitigation requests precluded Debtor from making the Modification Request in this case as a "duplicative request" under 12 C.F.R. § 1024.41(i), where the "servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application."

249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000) (if any one subsection applies, the Court must grant a motion for relief from stay.); *In re Leonard*, 151 B.R. 639, 643 (Bankr. N.D.N.Y. 1992).

Courts have broad discretion in granting stay relief. *In re Bennett Funding Group, Inc.*, 212 B.R. 206, 211 (2d Cir. 1997) (citing *Manhattan King David Restaurant, Inc. v. Levine*, 163 B.R. 36, 40 (S.D.N.Y. 1993)); *Sterling*, 2018 WL 313085 at * 5; *In re Fierro*, No. 1-14-41439-NHL, 2015 WL 3465753, at *4 (Bankr. E.D.N.Y. May 29, 2015).

### Section 362(d)(1)

The movant bears the initial burden of showing "cause" under § 362(d)(1). *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999); *Fierro*, 2015 WL 3465753, at *4. If a sufficient showing is made, the burden shifts to the debtor to demonstrate that there is insufficient "cause" to modify the stay. *In re Anton*, 145 B.R. 767, 769 (Bankr. E.D.N.Y. 1992); *Fierro*, 2015 WL 3465753, at *4.

"The lack of adequate protection of an interest in property is one cause for relief, but is not the only cause." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990)(citing S.Rep. No. 989, 95th Cong., 2d Sess. 52, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5838.) The Second Circuit has adopted a list of twelve factors (the "*Sonnax* Factors") to determine whether cause exists under § 362(d)(1) to lift the automatic stay to allow a stayed proceeding to continue in state court. *Id*. at 1286. They are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable

subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*See also Fierro*, 2015 WL 3465753, at *4.

A movant need not satisfy every one of the twelve factors. *Mazzeo*, 167 F.3d at 143; *In re Burger Boys, Inc.*, 183 B.R. 682, 688 (S.D.N.Y. 1994); *Sterling*, 2018 WL 313085 at * 5. The court should weigh the particular circumstances of each case to reach the solution that is most just to all parties. *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

Application of the *Sonnax* Factors weighs in favor of granting relief from the automatic stay to allow the adjudication of DBT's and Debtor's mortgage foreclosure claims. State law issues clearly predominate in the Foreclosure Action, which has been on going in state court since 2015 and was litigated to a judgment. Allowing the parties to continue the Foreclosure Action will not prejudice other creditors because there is no equity in the Property, as discussed below. Debtor's Adversary can proceed before this Court or the federal district court while DBT's Foreclosure Action proceeds in state court. The balance of harms in lifting the stay does not favor Debtor because, as discussed above, Debtor's RESPA claims do not provide Debtor with a right to injunctive relief against DBT to stay the foreclosure process, and it would be prejudicial to DBT to keep the stay in effect based on Debtor's RESPA violation claims when injunctive relief would not otherwise be available. Said otherwise, the "policies of the automatic stay would not be furthered by the continuation of that stay as a surrogate for a preliminary injunction." *Grand Traverse*, 150 B.R. at 190. Thus, pursuant to the *Sonnax* Factors, cause exists to grant relief from the automatic stay. Based thereon, the Court does not reach whether

Debtor's proposed payments of $3,456 per month would be an adequate amount of adequate protection of DBT's interest.[12]

### Section 362(d)(2)

Stay relief should also be granted under 11 U.S.C. § 362(d)(2), under which "[a] creditor has the burden of establishing that the debtor has no equity in the property, the burden [then] shifts to the debtor to prove that the property is necessary to an effective reorganization." *Thompson v. JP Morgan Chase Bank, N.A.*, No. 11-CV-2905 JFB, 2012 WL 739384, at *6 (E.D.N.Y. Mar. 8, 2012) (quoting *2670 West Ridge Road, LLC v. Real Estate Asset Purchase Corp.*, No. 10–CV–6095–CJS, 2010 WL 3516584, at *2, (W.D.N.Y. Sept. 3, 2010)). *See* 11 U.S.C. § 362(g). Here, there is no dispute that Debtor has no equity in the Property; Debtor ascribed a $475,000 value to the Property and Debtor does not challenge the Loan balance of $577,181.26. *See In re WORLDCOM, INC.*, No. 02-13533, 2003 WL 22025051, at *4 (Bankr. S.D.N.Y. Jan. 30, 2003)(debtor lacks equity in the property where the value of the property is less than the total amount of claims that the property secures.)

The Supreme Court has stated that a debtor's burden of proof that the property is necessary to an effective reorganization is "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76, 108 S. Ct. 626, 633, 98 L. Ed. 2d 740 (1988)(emphasis in original). The Court went on to state that "[t]his means, … that there must be a reasonable possibility of a successful reorganization within a reasonable time." *Id.* (quotations and citation omitted). "'The test is one of feasibility. The debtor need not show that

---

[12] DBT asserts the monthly amount due is $3,783.49, but it is not clear whether this amount includes taxes and insurance.

the plan is confirmable, but that the things which are to be done after confirmation can be done as a practical matter. A motion for relief from the stay should not be turned into a confirmation hearing; the debtor need only show that where there is lack of equity, the proposed plan has a realistic chance of being confirmed and is not patently unconfirmable.'" *In re 347 Linden LLC*, No. 11-CV-1990 KAM, 2011 WL 2971496, at *8 (E.D.N.Y. July 20, 2011) (quoting *In re 160 Bleecker St. Assocs.*, 156 B.R. 405, 411 (S.D.N.Y. 1993) (citations omitted)). *See also In re 300 Washington St. LLC*, 528 B.R. 534, 553 (Bankr. E.D.N.Y. 2015). "The debtor's burden of demonstrating a reasonable possibility of a successful reorganization increases with time." *In re Ritz-Carlton of D.C., Inc.*, 98 B.R. 170, 172 (S.D.N.Y. 1989).

Debtor acknowledges that she bears this burden, but she has failed to meet it. Debtor admits that she cannot confirm a chapter 13 plan without obtaining the loan modification she desires. Debtor has apparently been declined for a loan modification three times, for which she has now sued DBT. There is no evidence in the record from which this Court could find that she will likely be granted the modification she requires to confirm her Plan.  Debtor's Plan proposes to pay DBT $3,456 per month for 40 years on her $577,181.26 mortgage Loan balance, which includes capitalized arrears of $166,686.  DBT is not required to provide such a loan modification to Debtor, and this Court lacks the statutory authority to impose such a restructure under §§ 1322(b)(2) and 1325(a)(5). *See Nobelman v. American Savings Bank*, 508 U.S. 324, 325–26, 332, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (chapter 13 debtor cannot strip down a partially unsecured residential mortgage lien secured only by the debtor's principal residence). *See also In re Hussain*, 250 B.R. 502, 509 (Bankr. D.N.J. 2000)(finding that debtor's attempt to confirm a plan that modifies various real estate secured claims to extend maturity for twenty to thirty years contrary to authority).

Debtor's offer to pay adequate protection while she litigates the Adversary to conclusion also fails. She seeks to pursue her Adversary to reduce or eliminate her mortgage balance without confirming a chapter 13 plan. Debtor stated she will seek to withdraw the reference of her Adversary and have it tried before the district court. If withdrawn, given the substantial demands on the dockets of the district court, it could easily be 2 to 3 years before the Adversary is tried, if it were not resolved on a dispositive motion. With appeals, the Adversary litigation process could conceivably stretch on for longer than the 60-month maximum under which Debtor could make payments under a confirmed plan. *See* 11 U.S.C. § 1322(d)(1)(C) (chapter 13 plan cannot exceed 5 years). This game plan does not fit within the contours of the chapter 13 process. *See generally Grand Traverse*, 150 B.R. 176 (confirmation of chapter 11 plan not reasonably in prospect given adversary proceeding concerning lender liability and fraud between parties required to be resolved before confirmation could proceed).

In any event, without a loan modification, the Plan payments are not sufficient to cure the $166,686 in pre-petition arrears and to keep the mortgage current post-petition as required pursuant to 11 U.S.C. § 1322(b)(3),(5) in order for the Court to confirm a plan. *In re Lemma*, 394 B.R. 315, 322 (Bankr. E.D.N.Y. 2008) ("The concept of 'cure' under subsections (b)(3) and (b)(5) includes the power to de-accelerate a mortgage, pay out the prepetition arrears under a plan and reinstate the original payment schedule.")(citing *In re Taddeo*, 685 F.2d 24, 26, 27 (2d Cir. 1982)).

Accordingly, because Debtor cannot demonstrate that she is likely to obtain the loan modification she desires and requires to confirm a plan, stay relief should also be granted under §362(d)(2).

**Section 1301(c)**

DBT seeks relief from the co-debtor stay imposed by § 1301(a) of the Bankruptcy Code,

asserting that such relief is warranted under § 1301(c). Under § 1301(a) of the Bankruptcy Code,

a creditor is stayed from pursuing a Chapter 13 debtor's co-obligor until the Chapter 13 case is

"closed, dismissed, or converted to a case under chapter 7 or 11 of this title." 11 U.S.C. §

1301(a)(2). Section 1301(c) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall
> grant relief from the stay provided by subsection (a) of this section with respect to
> a creditor, to the extent that—
>
> (1) as between the debtor and the individual protected under subsection (a) of this
> section, such individual received the consideration for the claim held by such
> creditor;
> (2) the plan filed by the debtor proposes not to pay such claim; or
> (3) such creditor's interest would be irreparably harmed by continuation of such
> stay.

11 U.S.C. § 1301(c).

In *Lemma*, the court denied the creditor's motion for relief from the co-debtor stay under

§ 1301(c)(2) where the debtor had confirmed a plan that would pay the creditor's claim over the

life of the plan. 394 B.R. at 321–22. Here, there is no dispute that Debtor has not proposed a

plan that will pay DBT's claim over the life of the Plan. "'If the full debt is not paid through the

plan, creditors are not forced to wait until the plan is complete to receive the money they are

unquestionably owed from cosigners' and relief from the codebtor stay is appropriate.'" *Lemma*,

394 B.R. at 321 (quoting *Southeastern Bank v. Brown*, 266 B.R. 900, 908 (S.D. Ga. 2001)).

Thus, relief from the co-debtor stay is also warranted.

Accordingly, it is hereby

**ORDERED**, that the automatic stay in effect pursuant to 11 U.S.C. § 362(a), is hereby terminated pursuant to 11 U.S.C. § 362(d)(1) for cause and pursuant to 11 U.S.C. § 362(d)(2) as Debtor lacks equity in the Property and the Property is not necessary to an effective reorganization, to allow Select Portfolio Servicing Inc., as servicer for Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the Impac Secured Assets Corp., Mortgage Pass-Through Certificates Series 2006-4, as well as their agents, successors and assigns, to continue their foreclosure action concerning the real property located at 106 Park Hill Avenue, Massapequa, NY 11758; and it is further

**ORDERED**, that the co-debtor stay of 11 U.S.C. § 1301(a) is also terminated pursuant to 11 U.S.C. § 1301(c) to allow Select Portfolio Servicing Inc., as servicer for Deutsche Bank National Trust Company, as trustee, on behalf of the holders of the Impac Secured Assets Corp., Mortgage Pass-Through Certificates Series 2006-4, as well as their agents, successors and assigns, to continue their foreclosure action concerning the real property located at 106 Park Hill Avenue, Massapequa, NY 11758; and it is further

**ORDERED**, that the Chapter 13 Trustee shall be served with a copy of the referee's report of sale within **thirty (30) days** of the report, and shall be noticed with any surplus monies realized from the sale of the Property; and it is further

**ORDERED**, that all other relief sought in the Motion and the Objection is denied.

**Dated: May 10, 2019**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**